<div style="text-align:right">Judgment for the defendants.</div>

## Neilson and others *against* The Columbian Insurance Company.

THIS was an action, on a policy of insurance, on the cargo of the schooner *William*, on a voyage from *New-York* to *Madeira*. The goods consisted of corn, flour, and a small quantity of beef, and were specifically enumerated and valued in the policy, which contained the usual memorandum in regard to fruit, grain, &c. being free from average, &c.

The defendants had paid into court *five hundred and ninety-seven* dollars, under a plea of tender.

The cause was tried at the *New-York* sittings on the 17th *December*, 1805, before Mr. Justice LIVINGSTON.

This cause having been tried before, and a new trial granted, it will be necessary only to refer to the report of the case, in 3 *Caines*, 108, and to take notice of such facts, as did not appear on the first trial, or the points that were not raised on the argument of the former motion to set aside the verdict.

The plaintiff produced witnesses to prove that it was impracticable, under existing circumstances, for the vessel to have returned to *Madeira*, or to have gone to *Lisbon*; and that it was prudent, and the best measure to go to the *Cape de Verd Islands*; that had the vessel gone to *Mogadore*, she might have obtained provisions, but not repairs; that it is very difficult to get repairs at the *Cape de Verd Islands*, as the supply of the requisite materials depend on casual arrivals, or wrecks.

The defendants offered in evidence the *case* made on the former motion for a new trial, corrected before the

Policy of insurance on a cargo of *corn* and *flour* from *New-York* to *Madeira*, with the usual memorandum. In her passage the vessel met with bad weather, and arriving in sight of *Madeira* was prevented by adverse winds from going into port; and suspecting a ship in sight to be a privateer, the master bore away, and, falling into the trade winds, went to the *Cape de Verd Islands*; where the cargo being found much damaged, was ordered to be sold by the government there. Not being able to repair the vessel, the insured broke up the voyage and abandoned as for a total loss; but the vessel afterwards got some repairs and went to *Lisbon*. It was held that going to the

*Cape de Verd Islands* was not warranted by *necessity*, and therefore, a deviation. The evidence stated in a *case* made on a former trial cannot be admitted to impeach the testimony of the same witness given on a second trial of the same cause.

Neilson and
others,
v.
Columbian In-
surance Comp.

judge, in order to contrast the testimony of the plaintiffs' principal witnesses, the two *Cavallos*, delivered on the first trial, with their depositions read at the second, and thereby to lessen their credibility. The plaintiffs objected to this species of evidence; but it was admitted by the judge. The charge to the jury was strongly in favour of the defendants, on the ground of deviation; and that the vessel might have been repaired, so far as to have enabled her to return to *Madeira* and complete the voyage. The jury found a verdict for the defendants.

The motion to set aside the verdict, was grounded on the following points. 1. The case made at the former trial, was improperly admitted to impeach the credit of the plaintiffs' witnesses. 2. The plea of tender, concluded every question as to the plaintiffs' right to recover, and confined the inquiry merely as to the amount; the fact of deviation ought not, therefore, to have been left to the jury. 3. That the verdict was manifestly against evidence. 4. That the judge misdirected the jury.

The counsel for the defendants objected to the arguing the motion for a new trial, as there had been no order to stay the proceedings, and a judgment had been entered on the verdict. The judge who tried the cause refused to grant the order, and on application to the court, it was also refused. It appeared, however, that the *postea* had been filed, and the rule for the judgment entered, on the first day of the present term, and that the *four* days were not expired, nor the judgment perfected. *The court* said, this is not like the case of *Shepherd & Case;* (*Coleman*, 90.) there the judgment had been duly entered. We will hear the motion argued.

*T. L. Ogden & Hoffman*, for the plaintiff. The report of the evidence given by a witness on a former trial, contained in a case, ought not to be received to impeach his credit before a second jury. The manner in which these cases are usually made, is well known: they are settled from the loose notes of the counsel, corrected by the notes or recollection of the judge, before whom the cause was tried, weeks after the trial; facts are often inserted from the mu-

bal concession of the counsel; and it would be extremely unjust to permit the character of a witness to be impeached by the evidence of persons not under oath, and given from an imperfect recollection of what had passed at the trial.— This cause has not, therefore, gone to the jury in a proper manner, and the court are unable to say, how far the improper admission of such evidence may have influenced them in forming their verdict.

[LIVINGSTON, J. There is no contradiction whatever in the testimony.]

The point in controversy was not the quality, or condition of the cargo. The loss was referred to the state of the vessel, or her utter incapacity to reach the place of destination. If the loss of the voyage was in consequence of the bad condition of the vessel, the memorandum in the policy was not to be taken into consideration. If the vessel was incapable of proceeding in the voyage, and there was no possibility of making the necessary repairs, the state of the cargo would not affect the plaintiffs' right to recover on the ground of the voyage having been defeated.

The counsel then went into an examination of the facts in the case, to show the necessity which compelled the vessel to go to *Bonavista*, in her disabled state, and the impossibility of obtaining the necessary repairs ; that every thing was done which was prudent and proper on the part of the insured, who were, therefore, justifiable in breaking up the voyage at *Bonavista*, and might claim of the insurers an indemnity for a total loss. The fact, they said, that the cargo was ordered to be sold by the government, would alone, authorise the abandonment. It was so decided in the case of *Dyson &* *others* v. *Rowcroft*,† which is perfectly analogous to the one now before the court.

By the tender, all the facts which would entitle the plaintiffs to recover, were admitted, and the only question for the consideration of the jury, was the amount of the damages. Yet the judge referred the question of the *deviation* to them, and gave a very decided opinion on that fact, as well as on the whole merits of the case.

NEW-YORK,
May, 1806.

Neilson and others
v.
Columbian Insurance Comp.

† 3 *Bos. & Puller*, 474.

NEW-YORK,
May, 1806.

Neilson and
others
v.
Columbian In-
surance Comp.

*Bogert*, contra. The evidence given at the first trial was produced to contrast it with the depositions of the same witnesses read on the second trial. There was no essential variation between them ; and it might be considered as supplementary, or explanatory of the depositions. The case having been settled before the judge, must be considered as correct. It is as proper evidence, as that of a witness to prove what another witness said on a former occasion.

، The tender did not exclude the right of inquiring into the deviation. There was a *jettison* of a part of the cargo, previous to the deviation. The tender was for what might be found due ; and without it, there was nothing by which the jury could have ascertained the damages occasioned by the *jettison*.

There was no necessity of going to the *Cape de Verd Islands.* The propriety or necessity of going there, under all the circumstances, was a fact which the jury were to decide. They have found against the plaintiffs, and the court will not lightly disturb their verdict. In the case of *Dyson* v. *Rowcroft*, the ship was wholly unable to proceed to the port of destination, and was sold, which of course put an end to the voyage.

· *Pendleton*, on the same side, was stopped by the court.

*Per curiam.* The admission of the case made on a former trial, as evidence to show what the witnesses then swore in order to discredit them at the second trial, was improper. The case is not evidence *upon oath.* It may have been made up by consent, and the points in contradiction may not have been particularly attended to by the judge, before whom it was corrected. The case is conclusive against the parties, as to the facts contained in it ; but not against third persons, whose veracity or credit is called in question. Though the case ought not to have been received in evidence, yet, in fact, it contained nothing to contradict, or discredit the witnesses, and could not have influenced the decision of the jury. There was evidence of a deviation ; a departure from within sight of *Madeira*, to the *Cape de Verd Islands*, a distance of 1,000 miles, without a real necessity. If there had been a necessity for the deviation, still the

vessel might have returned to *Madeira*, with little or no re- pairs ; there was no adequate or justifiable cause for break- ing up the voyage. On the whole, the verdict appears to be warranted by the evidence, and agreeable to the merits and justice of the case.

*Postea* to the defendants.