## KING v. THE DELAWARE INSURANCE COMPANY.

ERROR to the circuit court for the district of Pennsylvania, in an action of covenant upon a policy of insurance upon the freight of the *Venus* from Philadelphia, to the Isle of France.

The vessel sailed early in December, 1807, before the British orders in council of the preceding November were known in the United States. On the afternoon of the 16th of January, 1808, while prosecuting her voyage, she was arrested by the British ship of war *Wanderer*, by whom she was detained until the morning of the 18th, when she was restored to the captain, her pape being first endorsed with these words, "Ship Venus warned off the 18th of January, 1808, by his majesty's ship Wanderer, from proceeding to any port in possession of his majesty's enemies."

> "*Edward Medley*, 2d *Lieut.*"

The captain was verbally informed by an officer of the Wanderer, that the Isle of France was blockaded, and that the Venus would be a good prize if she proceeded thither.

The captain returned to Philadelphia, where he was disabled from prosecuting his voyage by the embargo. Considering the voyage as broken up by the arrest and detention of his vessel by the Wanderer, he on that account abandoned to the underwriters.

These facts were specially found by the jury, who also found that "by the interruption, detainment, and warning off of the British force, the voyage of the ship Venus was broken up."

They also found that the Isle of France was not

*The questions whether the voyage be broken up, and whether the captain was justified in returning, are questions of law, and the finding thereupon by a jury is not to be regarded by the court. The British orders in council of the 11th of November, 1807, did not prohibit a direct voyage from the United States to a colony of France. If from fear, founded on misrepresentation, the voyage be broken up, the underwriters are not liable.*

*actually* blockaded, from the 6th of December, 1807, to the 1st of February, 1808. And that by the information and warning given by the officers of the British fleet to the captain of the Venus, he was fully justified in returning to Philadelphia; and that by reason of the embargo she was unable to renew the voyage.

By the British orders in council of the 11th of November, 1807, as found by the jury, it is ordered " That all the ports and places of France and her allies, or of any other country at war with his majesty, and all other ports or places in Europe from which, although not at war with his majesty, the British flag is excluded, and all ports or places in the colonies belonging to his majesty's enemies, shall from henceforth be subject to the same restrictions in point of trade and navigation, with the exceptions herein after mentioned, as if the same were actually blockaded by his majesty's naval forces in the most strict and rigorous manner."

" But although his majesty would be fully justified, by the circumstances and considerations above recited, in establishing such system of restrictions with respect to all the countries and colonies of his enemies, without exception or qualification; yet his majesty, being nevertheless desirous not to subject neutrals to any greater inconvenience than is absolutely inseparable from the carrying into effect his majesty's just determination to counteract the designs of his enemies, and to retort upon his enemies themselves, the consequences of their own violence and injustice; and being yet willing to hope that it may be possible (consistently with that object) still to allow to neutrals the opportunity of furnishing themselves with produce for their own consumption and supply; and even to leave open for the present such trade with his majesty's enemies, as shall be carried on directly with the ports of his majesty's dominions, or of his allies, in the manner herein after mentioned.

His majesty is therefore pleased further to order,

and it is hereby ordered, that nothing herein contained shall extend to subject to capture, or condemnation, any vessel, or the cargo of any vessel, belonging to any country, not declared by this order to be subjected to the restrictions incident to a state of blockade which *shall have* cleared out with such cargo from some port or place of the country to which she belongs, (either in Europe or America, or from some free port in his majesty's colonies, under circumstances in which such trade from such free port is permitted,) direct to some port or place in the colonies of his majesty's enemies, or from those colonies direct to the country to which such vessel belongs, or to some free port in his majesty's colonies, in such cases and with such articles as it may be lawful to import into such free port; nor to any vessel, or the cargo of any vessel, belonging to any country not at war with his majesty, which shall have cleared out from some port or place in this kingdom, or from Gibraltar, or Malta, under such regulations as his majesty may think fit to prescribe, or from any port belonging to his majesty's allies, and shall be proceeding direct to the port specified in her clearance; nor to any vessel, or the cargo of any vessel, belonging to any country not at war with his majesty, which shall be coming from any port or place in Europe which is declared by this order to be subject to the restrictions incident to a state of blockade, destined to some port or place in Europe belonging to his majesty, and which shall be on her voyage direct thereto; but these exemptions are not to be understood as exempting from capture, or confiscation, any vessel or goods which shall be liable thereto in respect of having entered or departed from any port or place actually blockaded by his majesty's squadrons or ships of war, or for being enemies' property, or for any other cause than the contravention of this present order."

" And the commanders of his majesty's ships of war, &c. are hereby instructed to warn every vessel which shall have commenced her voyage prior to any notice of this order, and shall be destined to any port

KING
v.
DEL. IN. CO.

of France, or of her allies, or of any other country at war with his majesty, or to any port or place from which the British flag as aforesaid is excluded, or to any colony belonging to his majesty's enemies, and which shall not have cleared as is herein before allowed, to discontinue her voyage, and to proceed to some port or place in this kingdom, or to Gibraltar, or Malta; and every vessel which, after having been so warned, or after a reasonable time shall have been afforded for the arrival of information of this his majesty's order, at any port or place from which she sailed, or which, after having notice of this order, shall be found in the prosecution of any voyage contrary to the restrictions contained in this order, shall be captured, and, together with her cargo, condemned as lawful prize to the captors."

The Venus returned to the Delaware on the 21st of February, 1808, and, on the 22d, the following letter of abandonment was written by *Vanuxem and Clark*, the agents of the plaintiff.

Thomas Fitzsimmons, Esq.

Sir,

The ship Venus, Captain King bound from hence to the Isle of France, having had the register endorsed, and warned by the British ship Wanderer from proceeding to her destination, has returned to this port; by which circumstance her voyage is broken up. We do therefore hereby abandon to your office the freight insured by policy of 5th December last, for 6,000 dollars, on freight out valued at 8,000 dollars.

Yours,

Vanuxem and Clark.

Thomas Fitzsimmons, Esq.

*Pres. Del. Ins. Co.*

The jury further found that the possession was not

as prize, but merely to prevent the Venus from prosecuting her voyage to the Isle of France.

Upon this special verdict, judgment, in the court below, was rendered for the defendants.

*Ingersoll*, jun. for plaintiff in error, contended,

1. That no abandonment at all was necessary in this case.

2. That the abandonment was sufficient.

3. That this was a loss within the policy.

4. That the justification of the captain, from all the circumstances of the case, was a matter of fact to be decided by the jury, and that their finding upon that point was conclusive.

5. If the justification be not a matter of fact for the jury, yet the facts found by the jury are in *law* a justification

1. and 2. Upon the question of abandonment he cited 2 *Emerig.* 174, 175. *Marsh.* 480. *5th edit.* 148. *Le Guidon, c.* 7. *Roccus, in notis.* 44. 95. 3 *Atk.* 195. 1 *T. R.* 608. *Park,* 171. 192. 239. *Marsh.* 517. 559. 2 *Valin,* 99. *Pothier,* n. 128. 1 *Johns. N. Y. Rep.* 181. *Emerig.* 197. 1 *T. R.* 304. *Millar,* 308. 282. 2 *Burr.* 1209. *Park,* 143. 5 *Bos. & Pull.* 310. *Lucena* v. *Crauford.*

Upon the 3d, 4th and 5th points, which included the question of justification of the captain in returning to Philadelphia, he cited *Doug.* 219. *Ship Hope. Marsh.* 498. 505. *Park,* 168. *Ship Grace.* 3 *Bos. & Pull.* 474. *Ship Tartar.* 3 *Caines,* 188. 1 *Johns.* 301. 5 *Bos. & Pull.* 434. 2 *Johns.* 264. 1 *Rob.* 146. *Amer. edit.* 1 *Camp.* 454. *Blackenhagen* v. *London Assurance Company.* And the case of *Dœderer* v. *Delaware Insurance Company,* in the circuit court for the district of Pennsylvania, in April, 1807, to show that the justi-

KING
v.
DEL. IN. CO.

fication of the captain was matter of fact to be left to the jury.

And to show that in point of law the captain was justified in returning, he cited 2 *Burr.* 696. *Goss* v. *Withers. Marsh.* 486. *Roccus, not.* 64. 4 *Cranch,* 29. *Rhinelander* v. *Penn. In. Co.*

That the abandonment was sufficient, and related back to the time of arrest, when the loss was total. 1 *Emerig.* 440. *Marsh.* 519. 4 *Cranch,* 202. *Marshall* v. *Del. In. Co.* which case has been confirmed in England, in *B. R.* 10 *East,* 329. *Bainbridge* v. *Nielson.* 2 *Valin,* 123. 1 *Emerig.* 537, 538. *Marsh.* 434. 3 *Rob.* 180. *The Hiram.* 2 *Johns.* 336. 352. *Scott* v. *Libby.* and *Barker* v. *Cheviott.* 1 *Bos. & Pull.* 634. *Curling* v. *Long.* 7 *T. R.* 381. *Cook* v. *Jennings. Doug.* 219. *Milles* v. *Fletcher.* 1 *Salk.* 198. *Brewster* v. *Kitchell.* 1 *Emerig. c.* 12. § 31. *p.* 542, 543, 544. *Case of the Colomb. Roccus, not.* 63. 1 *Johns.* 301. 4 *Dal.* 417. *Symonds* v. *Union In. Co.* 9 *East,* 283. *Barker* v. *Blakes.* 1 *Emerig.* 508. - 1 *Johns.* 249. *Schmidt* v. *United In. Co.* 1 *Bos. & Pull.* 200. *Driscol* v. *Bovil.* 1 *Bos. & Pull.* 213. *Driscol* v. *Passmore.*

*Binney* and *Hopkinson,* contra.

The assured at the time of abandonment must state a good cause of abandonment. The only causes assigned by the plaintiff are those stated in the special verdict, none of which are sufficient.

The special verdict finds *matters of law* which ought not to have been submitted to the jury; viz. *that the voyage was broken up,* and that the captain was *justified* in returning. He was opposed by no *physical* or *legal* impediment. The jury have found that the arrest was *not as prize,* but only to prevent the prosecution of the voyage. The exemption from the general operation of the orders in council of the 11th of November, embraces the case of a vessel sailing from a neutral port direct to an enemy's colony. The words are: " Nothing herein contained shall

extend to subject to capture or condemnation any vessel," "belonging to any country not declared by this order to be subjected to the restrictions incident to a state of blockade, which *shall have* cleared out" "from some port" "of the country to which she belongs," "direct to some port" "in the colonies of his majesty's enemies." The expression *shall have* must, in grammatical construction, allude to a time which was future when the order was passed, and also to a time which should have passed, before the arrival of that future time. "*Which shall have cleared out.*" That is, which shall *then* have cleared out. *When?* At the time of the seizure. If at the time of seizure the vessel shall have cleared out from a neutral port direct to an enemy's colony, she is within the exception to the general order. If it had been intended to except only those which had cleared out before the 11th of November, the date of the order, the expression would have been, *which have* cleared out, &c.

If the Venus was within the exception to the order, the officer of the Wanderer had no right to prohibit her from proceeding on her voyage; and his prohibition was no justification to the captain in returning to Philadelphia.

But even if the order did include this vessel, yet the prohibition was no justification to the captain; because the Isle of France was only nominally, not actually blockaded.

A constructive blockade, if it be a peril insured against, must be considered as within the denomination of *restraints*, but, from the terms of the policy, it must be a restraint which comes to the hurt, damage or detriment of the thing insured. It must therefore have been either an actual or a legal restraint.

A constructive blockade is not known to the law of nations. Our courts reject it. It is not a *legal* restraint. 2 *Caines,* 11. 1 *Johns.* 253.

If the circumstances of the present case are a justi-

fication, then every ill founded apprehension of a ti-
morous man may justify an abandonment.    There
must be peril in point of fact.    The misapprehension
of a weak man is not sufficient. 3 *Bos. & Pull.* 392.
5 *Esp.* 50. *Park,* 226.    The captain ought to have
proceeded, that he might himself see whether the
port was actually blockaded, or not.

He ought not to have depended upon the informa-
tion he received from the Wanderer.

*Harper,* in reply.

The captain was under a moral incapacity to pro-
ceed on his voyage, and was therefore justified in re-
turning.    The policy of Great Britain was to interdict
this neutral commerce; it was the great object of the or-
der of the 11th of November, 1807. The words *shall have
cleared out,* mean, shall have *now* cleared out, *i. e.* be-
fore the date of the order.    It is immaterial whether
this order was warranted by the law of nations, because
it was still within the peril of restraint of princes.    A
probability of capture and condemnation was suffi-
cient.    Such a reasonable apprehension as a man of
firmness might indulge.

*February* 17.

MARSHALL, Ch. J. delivered the opinion of the
court as follows:

This suit was instituted on a policy insuring the
freight of the Venus, from Philadelphia to the Isle of
France.    The vessel sailed early in December, 1807,
before the British orders in council, of the preceding
November, were known in the United States.    On
the afternoon of the 16th of January, 1808, while
prosecuting her voyage, she met the British ship of
war Wanderer, by whom she was arrested and detain-
ed until the morning of the 18th, when she was re-
stored to the captain, her papers being first endorsed
with these words, "Ship Venus warned off the 18th
of January, 1808, by H. M. S. Wanderer, from pro-

ceeding to any port in possession of his majesty's enemies."

Edward Medley, second lieutenant.

KING
v.
DEL. IN. CO.

The captain was verbally informed by an officer of the Wanderer that the Isle of France was blockaded, and that the Venus would be a good prize if she proceeded thither.

The captain returned to Philadelphia, where he was disabled from prosecuting his voyage by the embargo. Considering the voyage as broken up, by the arrest and detention of his vessel by the Wanderer, he on that account abandoned to the underwriters.

The principal question arising on this case is, was the captain of the Venus justified in returning to Philadelphia, after having proceeded about 1,000 miles on his voyage, either by the endorsement on his papers, or the verbal information given by an officer of the Wanderer?

A point preliminary to the examination of this question on its merits has been made by the plaintiff in error.

The jury have found, that "by the interruption, detainment, and warning off of the British force, the voyage of the said ship Venus was broken up."

After stating the verbal information given by the British officer respecting the blockade of the Isle of France, is this further finding, " We find, in consequence thereof, that the said Elisha King was fully justified in returning to the port of Philadelphia."

These findings, it is urged, conclude the court, and render this special verdict equivalent to a general one.

But this court is not of that opinion. It has been truly said, that finding the breaking up of the voyage finds nothing. The question recurs, was the voyage broken up by one of the perils insured against, or by

the fault of the captain? The answer to this question determines the liability of the underwriters.

It has been also truly said that the question of justification is a question of law, not of fact. If, as in this case, the jury find the fact specially, and draw the legal conclusion that the fact amounts to a justification, the court is not bound by that conclusion.

The case, then, is open to examination on its real merits, unaffected by the particular findings which have been noticed.

In proceeding to inquire whether the circumstances which actually occurred, justified the captain of the Venus in returning to Philadelphia, it becomes important to ascertain the real hazard of prosecuting his voyage. This essentially depends on the construction of the British orders of council issued in November, 1807. By the plaintiff in error it is insisted, that these orders extend to the direct trade between a neutral port and the colony of an enemy. In support of this construction, a very acute and elaborate criticism has been bestowed on those orders, which appears to the court merely to furnish additional proof of the imperfection of all human language. The intent of the orders to exclude from their operation this direct trade, an intent alike manifested by the context, and by the particular words forming the exception, the universal understanding of both countries, which has been, on more than one occasion, publicly and officially expressed, are too conclusive on this point to render it necessary that the court should proceed to review that analysis of this document which has been so well made at the bar.

According to the construction contended for by the plaintiffs in error, an exception professedly made to mitigate the rigour of the general rule, " and still to allow to neutrals the opportunity of furnishing themselves with colonial produce for their own consumption and supply," would be more rigorous than the rule itself, and would interdict that trade by which

they were to be supplied with this produce for their own use, with as jealous circumspection as the trade professedly prohibited by the general rule.

It is, then, the clear and unanimous opinion of the court, that the words " shall have," which are used in the exception, relate as well to the time of capture, as to the time of issuing the orders, and that a direct voyage from the United States to a colony of France, was not prohibited.

It being found that the Isle of France was not actually blockaded, and the orders not prohibiting the voyage, it remains to inquire whether the apprehension excited by the warning, or by the verbal communication of a British officer, justified the return of the Venus to Philadelphia.

. It has been very truly observed that, in this case, the Venus was not physically incapacitated from prosecuting her voyage.

With equal truth has it been observed, that there was no legal impediment to her proceeding, because the voyage was not prohibited by the orders of November, 1807; and, consequently, the endorsement on her papers would not have increased the danger.

There did not, then, at the time the voyage was abandoned, exist, either in fact, or in law, the restraint or detention, against which the underwriters insured. From fear, founded on misrepresentation, the voyage was broken up, and the vessel returned to her port of departure.

Whether this might be justified under any circumstances it is unnecessary to determine. But the court is of opinion that the circumstances of this case did not justify it. The Venus might have proceeded, and ought to have proceeded, until she could obtain further information. It would be dangerous in the extreme if any false intelligence received on a voyage

KING
v.
DEL. IN. Co.

might justify a captain in acting as if that intelligence were true.

The case of Blackenhagen .v. The London Assurance Company, has a strong bearing on this case, and though that was a decision at *Nisi Prius*, it is entitled to all the respect which is due to the court of common pleas. After the same opinion had been successively given by Lord Ellenborough, and by Sir James Mansfield, it was affirmed by the whole court, and the jury having found against the opinion of the judge, a new trial was granted.

The court gives no opinion on the question how far the underwriters would have been liable, had the orders of council prohibited the trade to the Isle of France. This decision is not intended in any manner to affect that question.

Judgment affirmed with costs.