Parsons, C. J.
(after briefly stating the facts agreed.) The question is, whether the plaintiffs are entitled to recover for. any loss within the policy, which insures against all the usual risks.
As no damage is stated as having happened to the goods insured, the only ground of claim is for a total loss, arising from the loss of *295 the voyage insured. It must be admitted that the voyage has been wholly lost; but unless this loss *is from [ * 352 j some peril insured against, the plaintiffs must fail, unless some exception be made with respect to the cotton.
When the master had notice of the British orders, and unde stood that he could not afterwards proceed to his destined port, he departed from the course of his voyage, and arrived at Plymouth. As this was done for a good cause, and for the purpose of procuring intelligence and advice, and not with the intention of discontinuing the voyage, his proceeding is no deviation. It also appears that, after he arrived at Plymouth, finding new obstacles to the prosecution of his original voyage, he determined to proceed to London, and there discharge his cargo; but was prevented by head winds from sailing until the 1st of April, 1807. As an intention to deviate, where a ship has commenced the voyage assured, is no deviation, this determination of the master is no deviation; which must be considered as commencing on her sailing from Plymouth for London, for then the original voyage was abandoned. Therefore, whatever loss, from any of the perils insured against, happened before the 1st of April, is a charge on the underwriters.
It appears that the ship met with considerable sea damage while in the harbor of Plymouth, for which the underwriters upon the ship are answerable.
But the policy before us is only on the merchandise. Now, if the voyage was lost by a peril within the policy, that peril must be either capture, or the arrest and detention of a prince. But the departure from the direct course of the voyage, and the final abandonment of it, were not from capture, but from the fear of capture, which is not insured against. And there appears to be no arrest and detention of any prince.
For when the ship was in Plymouth, she might have cleared even for her port of destination; but the danger of proceeding thither was too imminent, in consequence of the French decrees, to justify that measure; or the ship might have returned home with her cargo. Indeed, no fact is stated which can be correctly construed as an arrest. It is true *tbat the cotton was [ * 353 J refused to be cleared at Plymouth for Rotterdam; but this was no arrest. For the refusing in a foreign country to clear out a vessel for any particular port, or ports, cannot be deemed an arrest within the policy, while the vessel remains in the master’s possession, with liberty to proceed to any but the prohibited ports.
In this case, it is manifest that, if the cotton might have been cleared out, the master would not have availed himself of it to pro *296 ceed to his destined port. We cannot, therefore, find any peril insured against, by which the voyage has been lost, (a)

Plaintiffs nonsuit.

 [Richardson & Al. vs. Maine Insurance Company, 6 Mass. Rep. 102.— Cook vs. Essex Insurance Company, 6 Mass. Rep. 122. — Wheatland vs. Gray, 6 Mass. Rep. 124. -Amory vs. Jones, 6 Mass. Rep. 318. — Shepley vs. Tappan, 9 Mass. Rep. 20. — Breed vs. Eaton, 10 Mass. Rep. 21.— Brewer vs. Union Insurance Company, 12 Mass. Rep 170.— Tucker vs. United M. F. Insurance Company, 12 Mass. Rep. 288.—Ed .]