The action stood continued nisi for the opinion of the Court, which was delivered at an adjournment of the March term in Suffolk, by
Parker, J.
The insurance in this case is “ upon the brig Joseph from Boston to Tonningen.” The plaintiff claims as for a total loss, and also for a partial loss occasioned by expenses in endeavoring to get the vessel from Gluckstadt, on the River Elbe, and for the maintenance of the vessel and crew, after the unlading and delivery of her cargo to the consignee of the freighters at Gluckstadt.
The ground upon which the plaintiff insists upon his right to recover is, that, being driven into the Elbe by stress of weather, and being obliged by an order of the Danish government to unlade the cargo at Gluckstadt, and afterwards being prevented by the French power at Cuxhaven from going out of the Elbe, in order to get to Tonningen, the place of the vessel’s original destination, the voyage was lost, so as to authorize an abandonment to the underwriters.
In order to ascertain the justice and legality of the plaintiff’s claim, it is necessary to recur to the facts relating to the voyage, as agreed between the parties. It is stated that the vessel arrived off Heligoland on the 5th of January, 1810, and that, while waiting there for a pilot, to conduct * her to Tonningen, a storm arose, which obliged the vessel to put into the River Elbe. She then proceeded to Gluckstadt, on that river, where she was seized by order of the sovereign power of Denmark, on the 14th of January, and kept possession of until the 3d of March following, at which time, the vessel and cargo were released and restored to the master, on payment of certain charges, which, by agreement, have been considered as an average loss, and the proportion thereof falling upon the defendant, according to his sub scription, has been paid into Court.
*32 Soon after the seizure, the cargo was unladen by order of the government; and, after the release of the vessel and cargo, permission was obtained by the master to go to Tonningen from the Danish government; but, there being a French battery at Cuxhaven, which is at the mouth of the River Elbe, and the commander thereof having refused permission for the vessel to pass out of the river, the consignee of the cargo consented to receive, and did receive, the cargo at Gluckstadt, and paid the stipulated freight for the same to the master ; after which attempts were made to get round to Tonningen for the purpose of looking for freight, which is stated to have been the principal object of the voyage. But at Gluckstadt the vessel was cleared for New Orleans, and the master began his voyage down the river; but was not permitted to pass by the battery, and was prevented therefrom by fear of destruction to the vessel; and so the vessel was brought back to Gluckstadt, where she continued until December, 1810 ; when, in consequence of a process instituted by the seamen against her for their wages, she was sold, and the proceeds of the sale were distributed among the crew.
The expenses while lying at Gluckstadt, and of several journeys made by the master to Hamburgh, to obtain liberty to depart, form the claim for a partial loss, in addition to the expenses which accrued before the delivery of the cargo to the consignee, *Upon these facts, we are all of opinion that the plaintiff is not entitled to recover, upon the ground that the voyage was completed by the consent of the master, and of the consignee, to deliver and receive the cargo at Gluckstadt, this being a substitution of that place for Tonningen, and it appearing to be voluntary, since no necessity existed at the time, and at most there was but an apprehension that the vessel would be obstructed in her voyage from Gluckstadt to Tonningen, had it been attempted, (a) At the time that transaction took place, no attempt appears to have been made to pass the battery at Cuxhaven, or even to obtain permission therefor; nor does it appear that the cargo was reladen. *33 after permission was obtained from the Danish government to pursue the voyage to Tonningen.
The policy does not express that the vessel was to go to Tonningen to procure freight, but she is insured from Boston to Tonningen, the object of the voyage, as understood by the parties, being to carry the cargo then on board to the latter place; and it was competent to the parties to put an end to the contract between them, by adopting Gluckstadt as the place of delivery. And this it became their mutual interest to do, after the vessel was driven into the Elbe, and when there were difficulties in the further prosecution of the voyage. The mere fear of being obstructed by the French battery at Cuvhaven could not justify an abandonment of the voyage to the prejudice of the underwriter; and such fear was the only existing cause for substituting Gluckstadt for Tonningen. (b)
It is true that afterwards—indeed, a month after the cargo was delivered to the consignee and the freight paid — the vessel proceeded down the river with a clearance for New Orleans, and returned on account of the danger of attempting to pass the French battery. Whether this was such an actual restraint as would have justified an abandonment, had the vessel, with her cargo on board, then been destined for Tonningen, we need not decide; since it is very clear that the * whole purpose of the voyage understood to he insured had been answered by the delivery and acceptance of the cargo at Gluckstadt. (c)
The expenses previous to that transaction have been, by agreement, considered as an average loss, and by this underwriter have been paid. All the subsequent expenses were at the proper risk and loss of the assured. The plaintiff must, therefore, become nonsuit.

Plaintiff nonsuit.

 [From the report of the facts agreed upon, it appears that, on account of the French forces at Cuxhaven, 41 it was not in the power of the master and mariners, at any time after the vessel went into the River Elbe, to get her out of said river." Was not this a restraint within the terms of the policy ? Was it essential that no force was actually applied to the vessel, or exercised over her by persons in the actual possession of her? Was it not enough that external and irresistible force was always existing to prevent the possibility of her escape ? Oliver vs. The Union Insurance Company, 3 Wheat. 183. Saltus vs. United States Insurance Company, 15 Johns. Rep. 526. The case seems to differ from a declining to go into the port of destination for fear oi seizure. Smith vs. The Universal Insurance Company, 6 Wheat. 186 Sed vide Brewer vs. Union Insurance Company, 12 Mass. Rep. 170. And how could the delivery and acceptance of the cargo at an intermediate port affect the insurance upon the vessel, especially when one object of the voyage was to obtain freight at the port of destination ? — Ed.]

 [Vide Richardson & Al. vs. The Maine Fire and Marine Ins. Co., 6 Mass. Rep. 102. — Cooke vs. The Essex Fire and Murine Ins. Co., 6 Mass. Rep. 124. — Amory vs. Jones, 6 Mass. Rep. 318. — Brewer vs. The Union Ins. Co., 12 Mass. Rep. 170. — Tucker vs. The United F. and M. Ins. Co., 12 Mass. Rep. 209. — Lee vs. Gray, 7 Mass. Rep. 349. — Messonier vs. Un. Ins. Co., 1 Nott & M'Cord, 155. — King vs. Delaware Ins. Co., 2 Wash. C. C. Rep. 300. — Schmidt vs. United States Ins. Co., 1 Johns. 249. — Neilson vs. Col. Ins. Co., 1 Johns. 301.—Savage vs. Pleasants, 5 Binn. 503.—King vs. Del. Ins. Co., 6 Cranch, 71.— Ed.]

 [The case finds that the vessel was intended, at her port of destination, to be a seeking vessel. — Ed.