W. R. GRACE & CO. v. LUCKENBACH S. S. CO., Inc., et al.

(District Court, E. D. Virginia. March 12, 1918.)

1. SHIPPING ☞51—CHARTERS—RIGHT OF OWNER TO CANCEL—EFFECT OF WAR.

The existence of a state of war between United States and Germany did not operate to relieve a shipowner from its obligation to fulfill a prior charter, by which it undertook to carry a stated quantity of nitrates from Chile to ports of the United States, under the "restraint of princes" clause of the charter party, even conceding that nitrates are contraband of war, in the absence of any actual arrest of any of the vessels engaged in carrying out the contract, or imminent danger of their capture.

2. SHIPPING ☞51—CORPORATE ENTITY—LIABILITY FOR CONTRACTS OF AUXILIARY CORPORATION.

A corporation which leased a number of ships, of which it was owner, for a term of years, for operating purposes to another corporation, which was practically the same, having the same stockholders, president, and directors, *held* liable for a breach of charter by its lessee.

In Admiralty. Suit by W. R. Grace & Co. against the Luckenbach Steamship Company, Incorporated, and another. On exceptions to answer. Exceptions sustained.

Kirlin, Woolsey & Hickox, of New York City, and Edward R. Baird, Jr., of Norfolk, Va. (John M. Woolsey, of New York City, of counsel), for libelant.

Carter & Carter, of New York City, and Harry E. McCoy, of Norfolk, Va., for respondents.

WADDILL, District Judge. This is a libel in personam, with foreign attachment, against the respondents, to recover damages for the alleged breach of a contract of charter party, entered into between the libelant and the respondent, the Luckenbach Steamship Company, Incorporated, for freight room for the transportation of 75,000 tons (10 per cent. more or less), at the option of the libelant, of nitrate and/or ores, between the 1st of December, 1916, and the 31st of July, 1917, the same to be loaded at one or two ports and/or their adjacent caletas, between Valparaiso and Pisagua, Chile, both included, to one port between Savannah and Boston in the United States, at the rate of $15.59 gold per ton of 2,240 pounds delivered. The usual form of nitrate charter party used by the libelant, in arranging for the transportation of nitrate, was annexed to and made a part of the agreement.

The libel averred that the Luckenbach Company was the owner of certain steamships, contemplated to be used in the performance of said charter, and that certain of its steamships had been regularly leased by the respondent, the Luckenbach Company, Incorporated, to the Luckenbach Steamship Company, Incorporated, under a term charter covering from May 15 to December 1, 1920, and certain other ships for the period from October 1, 1915, to October 1, 1926, for a monthly rental payable on the 1st day of each month, and for other payments provided for in said lease. The libel further averred that the Luckenbach Steamship Company, the lessee of said steamships, and the Luckenbach Company, Incorporated, the owner of said steamships, were in fact maintained and managed as one corporation,

under the domination and control of Edgar F. Luckenbach, who was the president and principal stockholder in both corporations, for the purpose of financing and operating the steamships mentioned, and many other steamships and vessels, owned by said companies, or by the said Edgar F. Luckenbach.

The Luckenbach Steamship Company, Incorporated, the lessee, was capitalized at only $10,000, and the Luckenbach Company, Incorporated, the lessor, at $800,000, and both were chartered under the laws of the state of Delaware. The Luckenbach Company, Incorporated, denies knowledge of the acts and doings of the Luckenbach Steamship Company and responsibility therefor to the libelant.

Under this contract of affreightment, only one ship, the J. L. Luckenbach, was furnished, and one cargo of 5,998 tons of nitrate delivered. The libelant seeks to recover for the failure to transport the remaining 69,002 tons of nitrate or ores, 10 per cent. more or less, as provided in the contract. On the 21st of April, 1917, the libelant demanded of the respondent steamship company that it continue the shipments contemplated under the charter, and on the 23d of April, 1917, the Luckenbach Steamship Company, Incorporated, acting by and through its president, Edgar F. Luckenbach, declined to complete the contract, for the reason, as stated, that a state of war existed between this government (referring to the government of the United States) and the government of Germany, and claimed that they were released under article 13 of the nitrate charter party from so doing, which reads as follows:

"The * * * enemies, pirates, * * * arrest and restraint of princes, rulers, and people, political disturbance or impediment, * * * always mutually excepted."

Libelant further avers that the respondents failed to carry out the contract, either with the ships contemplated, or any other ships; that their failure was wholly unjustified, and constituted a willful and wrongful breach of the contract between them, and a violation of libelant's rights thereunder; that said respondents, in total disregard of libelant's rights, wrongfully chartered their ships in the same trade, for the carriage of nitrate from South America to the United States, under the same form of charter party, but at greatly increased prices; and that libelant was damaged to the extent of $1,500,000, which was duly demanded of the respondent, and payment thereof refused.

The defense set up in the answer is that of exemption under the "restraint of princes" clause referred to above, to the sufficiency of which the libelant excepts.

[1] The conclusion reached by the court is that the exception is well taken. The defense interposed under the facts and circumstances of this case constitutes no valid ground for the breach of contract on the part of the respondents. No suggestion is made of the arrest of any vessel of the respondent in carrying out the contract, and in the absence thereof there must exist some actual restraint preventing performance, or the danger of capture, by reason of the prevalence of the war, that was imminent, apparently remediless and certain, and which would have operated to prevent the contract from being performed.

The mere fact that the completion of the contract had, or might have, become more difficult, because of conditions other than those present at the time it was entered into, will not suffice. King v. Delaware Ins. Co., 6 Cranch, 71, 3 L. Ed. 155; Oliver v. Maryland Ins. Co., 7 Cranch, 487, 3 L. Ed. 414; Northern P. R. Co. v. American Trading Co., 195 U. S. 439, 25 Sup. Ct. 84, 49 L. Ed. 269; Furness-Withy Co., Ltd., v. Muller (D. C.) 232 Fed. 186; Furness-Withy Co., Ltd., v. Fahey (D. C.) 232 Fed. 189; Associated Portland Cement Mfrs. v. William Corey & Son, 31 L. T. R. 442; Miller & Co., Ltd., v. Taylor & Co., 32 L. T. R. 161; Lubbock v. Rowcroft, 5 Esp. N. P. 50; Atkinson v. Ritchie, 10 East, 530. Many of the cases cited arose under policies of insurance; but excepted perils in such policies have the same meaning as they have in bills of lading. The G. R. Booth, 171 U. S. 450, 459, 460, 19 Sup. Ct. 9, 43 L. Ed. 234, and cases cited; Hamilton v. Pandorf (1887) L. R. 2 App. Cas. 518.

The war between this country and Germany did not prevent, nor materially affect, the transportation of nitrates. There was no unusual or special danger to shipments between Chile and the United States, the line of travel not being in the danger zone. Doubtless freight rates were greatly advanced, as a result of the increased demand for ships; but neither that, nor mere increased difficulties, would warrant the breach of the contract; respondent's position as to supposed dangers at most being that because of rumors regarding the same, they reasonably feared that vessels carrying Chilian nitrate, would be subject to capture and destruction by German war vessels. They made no pretense of knowledge of any facts that would warrant any well-grounded fear either that the ships would be seized or detained or the libelant's cargo confiscated.

Nor would the respondent be relieved from liability in performing its contract, even assuming nitrate to be contraband. The contract on this account would not have been illegal, although the ship and cargo might have been subject to capture and forfeiture. Northern Pac. R. Co. v. American Trading Co., supra, 195 U. S. 439, 440, 465, 25 Sup. Ct. 84, 49 L. Ed. 269.

[2] The respondents admit the use of their ships for transportation of nitrates, during the period, and between the points covered by this contract, at greatly increased rates, and they cannot, and should not, escape responsibility for their breach of contract with the libelant. The defense interposed by them, seeking so to do, will not be entertained; nor will the Luckenbach Company, Incorporated, be allowed to escape liability, it sufficiently appearing from the pleadings, and the admissions made in reply to interrogatories filed, that the two corporations are substantially one, having the same ownership, the same directors, and the same officers, in their combined capacities carrying on the business out of which the breach of the contract in this case arose; and they appeared generally herein, and executed a joint and several stipulation for the release of the attached property, and the payment and performance of any judgment or decree which might be entered in this case by this or any appellate court. Moreover, they are liable under the doctrine of principal and agent. In re Muncie Pulp

Co., 139 Fed. 546, 71 C. C. A. 530; In re Rieger, Kapner & Altmark (D. C.) 157 Fed. 609, 613, 614; New York Trust Co. v. Bermuda-Atlantic S. S. Co. (D. C.) 211 Fed 989, 998, 999; Joseph R. Foard Co. v. State of Maryland, 219 Fed. 827, 829, 135 C. C. A. 497 (Circuit Court of Appeals, this circuit), and cases cited.

The defenses interposed by the answer being insufficient, the exceptions thereto will be sustained, and respondents given 15 days from the entry of the decree herein in which to answer over, if they so desire, and make such valid defense, if any they have, as they may be advised, and in default of their so doing an interlocutory decree will be entered, and the cause referred to a master for the ascertainment of damages.

Both libelant and the respondents having filed interrogatories with the libel and answer respectively, and each excepted to the same, the exceptions by the respondents to the interrogatories of the libelant will be overruled, save as respects the production of the charter parties called for in interrogatories Nos. 2, 3, 4, 5, 8, and 9, which should be sustained for the time being, as it does not seem necessary for the present to produce these papers, and the exceptions by the libelant to the interrogatories filed by the respondents will be sustained, since the interrogatories refer mainly to questions properly arising upon the assessment of damages.