OLIVER

v.

THE MARYLAND INSURANCE COMPANY,

1813.

March

*Absent*.... WASHINGTON, J. *and* TODD, J.

ERROR to the Circuit Court for the district of Maryland. The case arose upon a policy of insurance on the snow *Comet*, " at and from Baltimore to Bar- " celona, and at and from Barcelona back to Balti- " more."

She arrived at Barcelona on the 25th of July, 1807, and after remaining forty days under quarantine, went up to the city where she remained until the 8th of January, 1808. She then proceeded to *Salou* for the principal part of her cargo, which she took in there and sailed from thence on her return voyage to Baltimore on the 28th of January, 1808, and was captured by the British and condemned under the orders in council of the 7th of November, 1807.

At the trial the Defendants insisted on the delay at Barcelona and the stopping at Salou as deviations which destroyed the Plaintiff's right to recover upon the policy. The Plaintiff justified the stopping at Salou

The length of time a vessel may wait to take in her cargo, without discharging the underwriters, does not depend on the usage of the trade.

The danger which will justify a vessel in remaining in port a long time, without discharging the underwriters, must be obvious, immediate, directly applied to the interruption of the voyage, & imminent, not distant, contin-

OLIVER v. MARY'D. INS. CO.

gent & indefinite.

If, according to the usage of the trade, a vessel be permitted to go from one port to another to collect her cargo, and she unnecessarily exhaust at one port the whole time allowed according to the usage of the trade to complete her cargo, she cannot go to the other port without being guilty of such a deviation as will avoid the policy.

What is a reasonable apprehension of danger is a question of law to be decided by the Court. (Quere.)

by the usage of the trade. To justify the delay at Barcelona he relied on two grounds, 1st, a reasonable apprehension of capture; and 2d, the usage of the trade. But the Court below decided that these excuses, under the circumstances stated in the bills of exceptions, were insufficient. Verdict and judgment were rendered for the Defendants, and the Plaintiff brought his writ of error.

The circumstances relied upon to show a reasonable apprehension of danger were stated in the captain's protest to be as follows: that hearing, in the month of August, news respecting the dispute between Great Britain and the United States respecting the Chesapeake frigate, the agents recommended their remaining in Barcelona until they should hear how the differences should terminate, as part of their return cargo was to be purchased by bills on London. That when they were in the act of sailing for Salou on the 1st of December, they were informed that the Algerine cruizers were out capturing American vessels, and they were advised to remain until they received further information.

HARPER, *for the Plaintiff in error*, contended,

1st. That the vessel had a right, under the usage proved, to remain at Barcelona till her cargo was provided at Salou, and then to go to Salou to take it in. And, 2d. That she had a right to remain at Barcelona till the danger of the Algerine cruizers had passed away. 1 *Marshall*, 204. 1 *Johnson*, 181, 301. 2 *Johnson*, 138. 3 *Johnson*, 352.

MARTIN *and* PINKNEY, *contra*,

Did not deny that a reasonable apprehension of great danger would justify a reasonable delay; but contended there was no sufficient evidence of such reasonable apprehension. And with regard to the usage of trade they insisted, that if the vessel exhausted her time for loading at Barcelona, she was not justified by the usage of the trade in going to Salou. That the Court, and not the jury, was to judge from the facts whether the apprehension of danger was reasonable.

HARPER, *in reply*, contended,

That the question, whether there was reasonable apprehension of danger, was a question of fact for the jury to decide; or it was a question in which the law and fact were so blended as to be a matter properly cognizable by the jury.

*March 13th*....MARSHALL, *Ch. J.* delivered the opinion of the Court as follows:

This was an action brought on a policy insuring the snow Comet at and from Baltimore to Barcelona and at and from thence back to Baltimore. The Comet arrived at Barcelona on the 25th day of July, in the year 1807, where she was compelled to perform quarantine. On the 28th of November the Comet cleared out from Barcelona for Salou, a port of Catalonia, about sixty miles south of Barcelona, where her return cargo was ready to be taken on board. On the first of December, when in the act of sailing, the officers of the vessel were informed that the Algerine cruizers were out capturing American vessels. They were advised to remain until they received further information. On the 8th day of January, 1808, they sailed for Salou and arrived on the 10th. They were detained by high winds till the 28th of January, when they sailed for Baltimore. On the 5th of February the vessel was captured by a British cruizer, while on her return voyage, and carried into Gibraltar, where she was condemned under the orders of council of the 8th of November, 1807. Evidence was given that it was usual for vessels trading to Barcelona to touch at Salou or some other port on the same coast, to take in the whole or part of their return cargo, and that in some instances vessels had remained in the port of Barcelona four, six, and even eight months, waiting for a return cargo.

On this evidence the counsel for the Defendants moved the Court to instruct the jury that the Plaintiff could not recover in this cause by reason of the length of time the vessel remained at Barcelona. The Court refused to give the direction as prayed, but did instruct the jury that, if they believed the facts stated, the Plaintiff was not entitled to recover unless from the whole

OLIVER v. MARY'D. INS. CO.

testimony in the cause they should be of opinion that the vessel did not remain longer at Barcelona than the usage and custom of trade at that place rendered necessary to complete her cargo. To this direction of the Court the Plaintiff, by his counsel, excepted.

This exception was not much pressed at the bar, nor does it appear to this Court to contain any principle to which he could rightly object.

Unquestionably an idle waste of time, after a vessel has completed the purposes for which she entered a port, is a deviation which discharges the underwriters. If the Comet remained without excuse at Barcelona an unnecessary length of time while her cargo was ready for her and she might have sailed, she would remain at the risk of the owners—not of the underwriters

There is however some doubt spread over the opinion in this case in consequence of the terms in which it is expressed. The vessel might certainly remain as long as was necessary to complete her cargo, but it is scarcely to be supposed that this was regulated by usage and custom. The usages and customs of a port or of a trade are peculiar to the port or trade. But the necessity of waiting where a cargo is to be taken on board until it can be obtained is common to all ports and to all trades. The length of time frequently employed in selling one cargo and procuring another may assist in proving that a particular vessel has or has not practised unnecessary delays in port, but can establish no usage by which the time of remaining in port is fixed. The substantial part of the opinion however appears to have been, and seems so to have been understood, that the Plaintiff could not recover, unless the jury should be of opinion that the vessel did not remain longer at Barcelona than was necessary to complete her cargo, of which necessity the time usually employed for that purpose might be considered as evidence.

The Defendants then moved the Court to instruct the jury that if the said vessel continued at Barcelona as long as was justifiable by the usage of trade at that place for completing and taking in her cargo, and did not complete and take in her cargo there, but after-

wards went to Salou and remained there the length of time as stated in the said protest, in such case the Plaintiff is not entitled to recover.

The Court instructed the jury that if the vessel remained at Barcelona as long as the usage of trade justified for the purpose of taking in a cargo there, that she could not afterwards go to another port and take it in without vacating the policy.

To this opinion also the counsel for the Plaintiff excepted. Upon this exception there was some difference of opinion in this Court. For myself, I considered the direction as attaching the departure, which would avoid the contract, to the act of sailing to and continuing in Salou for the purpose of completing her return voyage, and am of opinion that although the Comet might have remained at Barcelona long enough to have taken in a return cargo there, for which she might or might not be blameable, yet that no additional fault was committed by touching at Salou for the purpose of completing her cargo, if to touch at Salou for that purpose was the usage of the trade.

A majority of the Court, however, is of a different opinion. The usage to stay at Barcelona for a return cargo, and to touch at Salou for a return cargo, as disclosed in the Plaintiff's evidence, are considered by them not as independent but as auxiliary usages which are to be taken in connexion in ascertaining whether there was or was not unreasonable delay in the conduct of the voyage. The assured had a right under these usages as they are called, to take in part of the cargo at Barcelona and part at Salou, or the whole at either port. The delay necessary for these purposes would be justifiable at either port; but if the assured exhausted the whole time, at one port, which, according to the usage, was allowable only for the purpose of taking in the whole cargo, the subsequent delay at another port, for the purpose of taking in the cargo, must be considered as unreasonable. The delay at Barcelona, under such circumstances, could not be necessary for the purposes of the voyage, and therefore would determine the policy. But the deviation would rest merely in intention, until the time of sailing for Salou, for until that

OLIVER v. MARY'D. INS. CO.

time the assured would have a right to lade his cargo at Barcelona, and thus retroactively justify his stay there under the usage. The delay could not be a consummated deviation until the whole time allowed by the usage was exhausted and the party had definitively abandoned the lading of a cargo which would justify that delay. The opinion of the Court below appears to the majority of this Court to have proceeded on this ground and to be correct.

The Plaintiff then, in addition to the former testimony, gave evidence that it was usual for vessels to remain at Barcelona until their return cargoes or so much thereof as might be necessary for their completion was provided and collected at Salou, or some other southern port in Catalonia, and then to sail to such port, for the purpose of taking in the cargoes so collected.

The Defendants then moved the Court to instruct the jury that since it appeared from the protest of the master and others on board the Comet, and from the sentence of condemnation produced by the Plaintiff, that all the return cargo, which the said vessel took in at Barcelona, was taken in on or before the 28th of November, that the said vessel was then ready for sea, and was actually cleared out on the 1st of December; and that being there, and about to sail immediately for Salou, the said snow Comet, in consequence of a report that the Algerine cruizers were out cruizing in the Mediterranean against American vessels, remained at Barcelona until the 8th of January, 1808, before she sailed from Barcelona, if the jury believed these facts the Plaintiff could not recover. This opinion was given by the Court and the Plaintiff excepted to it.

Had not the testimony on which this application was founded been spread upon the record the Court would have found some difficulty in deciding on the propriety of the opinion which was given from the terms employed in stating the application to the Circuit Court. It appears however from a comparison of the application to the Court with the testimony on which it was founded, to have been intended to obtain from the Court the opinion that the testimony respecting the report that the Algerines were out capturing American vessels was

not a sufficient justification for remaining at Barcelona from the 1st of December, 1807, till the 8th of January, 1808.

No doubt is entertained that the danger of capture from the Algerines, if proved to be real and immediate, would justify the continuance in the port of Barcelona.

And the apprehension of such danger, if founded on reasonable evidence, would produce a like effect. But in each case the danger must not be a mere general danger, indefinite in its application and locality. If it were so, in time of war, any delay, however long, in a port, would become excusable, for there would always be danger of capture from the enemy's cruizers. Nor is it sufficient that the danger should be extraordinary, for then any considerable increase of the general risk would authorize a similar delay. The danger, therefore, must be obvious and immediate in reference to the situation of the ship at the particular time. It must be such as is then directly applied to the interruption of the voyage, and imminent; not such as is merely distant, contingent and indefinite. In the present case it is not shown that there was any danger in proceeding from Barcelona to Salou. No Algerine force is shown to be interposed between those ports. Whatever might be the danger elsewhere, if there was none in proceeding to and remaining in Salou, it was the duty of the captain to have proceeded to that place, taken in his cargo, and remained there for further information. The captain was bound to have gone as far on his voyage as he could consistent with the general safety.

The judgment is affirmed with costs.

LIVINGSTON, *J.*

I concur in the opinion that the judgment of the Circuit Court be affirmed; but in coming to this result I have thought it necessary to examine only the fourth exception which was taken below. It is, according to my view of this cause, very immaterial to enquire whether the Plaintiffs succeeded in establishing the usage, as it has been incorrectly termed, for a vessel to remain several months at Barcelona for the purpose of obtain-

OLIVER v. MARY'D. INS. CO.

ing a return cargo: or whether at one period the master of the Comet entertained a well grounded apprehension of danger of capture by British vessels; or whether it was the course and usage of the trade for vessels bound from Barcelona to any foreign ports to touch at Salou, or at some other port south of Barcelona, on the coast of Catalonia, in order to take in their return cargoes; I say, whether these facts were established, or what opinion the Court gave on them in the course of the trial, are in my judgment, as this case comes up, totally irrelevant in the decision of it, because there are other facts proved, and that by the Plaintiffs themselves, which are in the opinion of the whole Court fatal to their claims. The facts are these: "That after all "fear from British cruizers had ceased, to wit: on the "28th of November, 1807, being ready for sea, the ves- "sel cleared for Salou on the 1st day of December fol- "lowing, and when in the act of sailing, information "was received that the Algerine cruizers were *out* cap- "turing American vessels; the master was therefore "advised to remain in port until they received other "intelligence, and did not sail for Salou until the 8th of "January, 1808."

On this evidence the Circuit Court instructed the jury, that if they believed these facts to be true the Plaintiffs were not entitled to recover. In giving this opinion the Court in effect said, that the information which was received at Barcelona respecting the Algerine cruizers did not justify a stay there from the 28th of November to the 8th of January.

To this opinion two objections are made

The one is, that the Court took upon itself to decide whether the delay last mentioned proceeded from a justifiable cause, instead of leaving it to the jury to determine both the law and the fact, In doing so, I think the Court committed no error. What will excuse a delay, apparently unreasonable, so as to repel the charge of a deviation on that account, must ever be and ought to be a question of law, to be decided by a Court under all the circumstances of the particular case. In this way only can any thing like certainty be attained; but if it be left to a jury not only to find the facts, which is

exclusively within their province, but also to pronounce what is the law resulting from them, it will be next to impossible to form a system of rules by which a merchant may safely regulate his conduct. Nor will it help the matter to consider it as a mixed question of law and fact, because that gives to the jury a right to disregard the opinion of the Court, which they will have no right to do in case it be considered exclusively as a question of law on which the Court alone has a right to decide. In civil cases every man has an interest in confining a jury as much as possible to their proper sphere, which is to decide on facts; while a Court does not encroach on their province, care should be taken not to encourage any improper encroachment on their part by unnecessarily throwing on them any exercise of what are the legitimate functions of a Court. Among these none appear to me to be better settled, than that it is the exclusive privilege and bounden duty of a Court to decide whether an act, which is to be done within a reasonable time to entitle a party to maintain his action, has been performed within such time or not. So also, where a party sets up an excuse for an act which will otherwise defeat his right to recover, it appertains exclusively to the Court to decide on the sufficiency of the matter alleged, and if a jury, after deciding on the facts, take upon themselves the further office of determining the legal effect thereof as to the case under consideration, in opposition to the declared opinion of the Court, they forget their duty and act contrary to law.

But if this be a question of law, the Plaintiff still supposes that the Circuit Court erred in not thinking that the facts proved constituted a valid excuse for the last forty days' stay at Barcelona, and in not instructing the jury accordingly. This excuse was, in my opinion, properly disposed of by the judge below, but instead of stating at length why I consider the alleged apprehension of capture by the Algerines as furnishing no justification for this delay, it is sufficient to say that I entirely concur, not only in the opinion which has already been delivered on this point, but in the whole of the reasoning on which it is founded.

STORY, *J.* concurred with Judge Livingston.

OLIVER
    *v*
MARY'D.
INS. CO.

MARSHALL, *Ch. J.* My own opinion was that the jury was to find the fact whether there was danger in passing between Barcelona and Salou; and that they ought to have been instructed that if there was danger it justified the delay, otherwise not.