## Case No. 3,398.
### CROCKER et al. v. JACKSON.
[1 Spr. 141;[1] 10 Law Rep. 70.]

District Court, D. Massachusetts. March Term, 1847.

#### MARINE INSURANCE—DEVIATION.

1. If a vessel, upon seeing another vessel in apparent distress, departs from her course, in order to ascertain if those on board need relief, it is not a deviation.

2. Neither is it a deviation to delay, in order to afford such relief.

3. But departure from her course, or delay, merely to save property, is a deviation.
[Cited in Peterson v. The Chandos, 4 Fed. 653.]

4. If the master be influenced by the double motive, of relieving distress and saving property, it is not a deviation.
[Cited in Peterson v. The Chandos, 4 Fed. 653.]

5. If, in such case, the circumstances are not decisive, as to the motives of the master, the court will give him the benefit of a favorable construction.

This was a libel, on behalf of the owners of the bark La Grange, against the respondent, a consignee of part of the cargo, to recover a contribution for damage sustained by the voluntary stranding of that vessel,

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

near Provincetown, during a gale. The respondent was insured by the Merchants' Insurance Company, and the defence was made in their behalf. The defence principally relied upon, was, that the La Grange had previously committed a deviation, in going out of her course, to speak, and then taking in tow, a vessel in distress. It appeared, in evidence, that on the 21st of November, then blowing fresh, with a heavy sea, a brig was seen from the La Grange, about three miles to leeward, with no sail set, apparently in distress; that the La .Grange ran down to her, and found her to be the Samuel, of Portland, having lost or split all her sails, with no materials to mend them, short of provisions, the mate and one hand ill below, and another partially disabled. The sea was running so high, that it was impracticable to send a boat on board. The master of the Samuel requested the master of the La Grange to lie by, until he should be furnished with supplies, and ascertain what he could do. Both vessels were then drifting fast out of their course, and, in order to save time and distance, the master of the bark proposed to take the brig in tow. This was done. Subsequently, supplies were furnished. In about four hours afterwards, the brig began to make sail, and was kept in tow for about thirty-six hours, and until within about fifteen miles of Boston light, when it came on to blow, and the hawser parted, or was cast off, and both vessels ran for Provincetown. The reason given for keeping the brig so long in tow, was, that she was in a crippled condition, by reason of having no heavy canvas, and of the sickness of her crew, and want of provisions; and that the bark had not sufficient to supply her, and for her own use, if they should be driven off; and, therefore, it was deemed expedient to keep together, and to supply the brig as wanted.

[It was argued for the defence, that the delay caused by going out of her course, and taking the brig in tow, was a deviation; that there was no necessity for taking the brig in tow, certainly not for towing her for so long a time; that a deviation could be justified only for the purpose of saving life, and if that had been the object here, the crew might have been taken off; that from the measures taken, the master of the barque must have intended to claim salvage. For the libellants, it was argued, that it was the duty of every master, on seeing a vessel in distress, to delay or go out of his course to speak her, and to give such assistance as he could; that such delay did not constitute a deviation, though delay for the sole purpose of saving property would; that there was no authority to sustain the ground taken by the defence; that it was according to the usage of the seas, for vessels to stop and aid others in distress, a usual incident of a voyage, and so not a deviation; and that good policy, and so far as insurers were concerned,

their own interest required that the master should have the right to perform this duty, without subjecting his owners to the risk of losing their insurance, and becoming responsible to the freighters for the cargo; also, that the loss in the present case, could not be attributed to the alleged deviation; and that the ship-owner was not responsible to the freighter for a loss which occurred subsequently to a deviation, and not in consequence of it.] [2]

F. C. Loring, for libellants.
R. Fletcher, for Merchants' Ins. Co.

SPRAGUE, District Judge, in delivering his opinion, said, in substance: Delay to save life is not a deviation; but delay merely to save property, is. [The rule as to intermediate cases is not settled. The general principle in respect to contracts of affreightment and insurance is, that the voyage shall be performed in the usual way. A voluntary departure from it is a deviation; but what is a voluntary departure? Parties must be held to contemplate the usual incidents of a voyage.] [2]

In this case, when the brig was seen in distress, it was the duty of the La Grange to run down to her, to ascertain whether the persons on board needed relief; and upon learning that they did, she was bound to take the necessary measures to afford it; and this constitutes no deviation. As the sea and wind were such, that the crew of the brig could not be transferred to the La Grange, and both vessels were fast drifting out of their course, the taking of the brig in tow was the proper mode of relief.

The only serious question is, whether the towing was continued too long. It is urged in behalf of the respondents, that the object of the captain of the La Grange was pecuniary gain, by earning salvage. But the crew of the brig needed assistance, and it must be presumed that the master was also actuated by a desire to afford them relief. Now there being a double motive, to relieve distress and to save property, does not render the delay a deviation, nor impair the merit of the act. The law, so far from discouraging the union of these motives, enhances the amount of salvage compensation, where the saving of property is accompanied by relief to passengers or crew. But if this towing was continued after it had ceased to be necessary to relieve the distress of the crew, and merely to save property, then it was a deviation; but I am not satisfied that it was so continued. The circumstances are not decisive, and, in doubtful cases, where the master may be influenced by motives of humanity, as well as the desire to save property, I think the court should give him the benefit of a favorable construction. To do otherwise, might be unjust, and would certainly be impolitic. It would teach masters

---

[2] [From 10 Law Rep. 70.]

that, in doubtful cases, they would extend relief at their peril. That although they had fairly exercised their best judgment, yet, upon subsequent revision by the court, they might be deemed to have committed an unjustifiable deviation, to the ruin of their owners and themselves. We should not look at the conduct of a master, in such cases, with a jealous scrutiny, nor give such a construction to doubtful acts, as would admonish him that, in order to be safe from judicial condemnation, he must harden his heart, and stint the measure of relief to danger and distress. The humanity and morals of the seas require a more liberal doctrine.

Being of opinion that there was no deviation, I have no occasion to consider the question made at the bar, as to what would have been its effect.

Decree for the libellants, for $195.77, damages and costs.

No question of jurisdiction was raised by the eminent counsel, in this case. In Cutler v. Rae, 7 How. [48 U. S.] 729, it was held by the supreme court, that the court had no jurisdiction. That case originated in the Massachusetts district—see 1 Spr. 137 [Rea v. Cutler, Case No. 11.599]—and was defended by Messrs. Fletcher & Curtis, who were afterwards respectively judges of the supreme court of Massachusetts and of the supreme court of the United States; yet neither of them raised the question of jurisdiction. In Beane v. The Mayurka [Case No. 1,175] Mr. Justice Curtis, in submission to what he deemed the decision of the court, in Cutler v. Rae [supra], decided that the admiralty had not jurisdiction of a suit in rem, for average contribution; but subsequently the supreme court, in Dupont v. Vance. 19 How. [60 U. S.] 171, sustained the jurisdiction in such case. It is believed that the authority of Cutler v. Rae [supra] will not be extended, but will be limited, at least, to the particular circumstances of that case. See note, 1 Spr. 138 [Rea v. Cutler, supra]. That delay, for the purpose of saving life, is not a deviation. See The Boston [Case No. 1,673]; The Henry Ewbank [Id. 6.376]; Bond v. The Cora [Id. 1,621]; Lawrence v. Sydebotham. 6 East. 45; Blaireau, 2 Cranch [6 U. S.] 240; The Emblem [Case No. 4.434]; The George Nicholaus [Id. 13.578]; Warder v. Goods [Id. 17.165]; The Waterloo. 2 Dod. 443; The Jane, 2 Hagg. Adm. 345; The Beaver, 3 C. Rob. Adm. 292; Phil. Ins. § 1027. The language of the reported cases is generally restricted to the saving of life. But all acts incidental thereto such as bearing down to a vessel which has made a signal, are included. See Williams v. A Box of Bullion [Case No. 17.717]. So, also, is the relief of persons in distress. 2 Pars. Mar. Law, 301. And in the case of A Box of Bullion it was held, that delay, by a homeward bound ship, for the purpose of taking the crew of an American vessel, abandoned at sea, from a foreign vessel, by which they had been rescued, and which was bound to a foreign port, was not a deviation, the usage in such cases being proved. In England, the merchants' shipping act (17 & 18 Vict. c. 104, § 459) enacts, that in case a vessel is stranded, or otherwise in distress, on the shore of any sea or tidal water situated within the limits of the United Kingdom, there shall be salvage allowed for saving life, and that it shall be paid by the owners of the ship, before all other salvage claims; and if the ship is destroyed, or its value, after deducting expenses, is not sufficient to pay the salvage on lives, the board of trade may award such sums as it deems fit, out of the mercantile marine fund, in whole or part satisfaction of

such unpaid salvage. The Bartley, 1 Swab. 198; The Coromandel, Id. 205; The Clarisse, Id. 129; The Leda, Id. 40.