GLOBE NAVIGATION CO., Limited, v. RUSS LUMBER & MILL CO.

(District Court, N. D. California. December 10, 1908.)

No. 13,774.

1. SHIPPING (§ 104*)—CARRIAGE OF GOODS—CONTRACTS OF AFFREIGHTMENT—IMPLIED TERMS.

In every contract of affreightment, unless otherwise expressly provided, the shipowner's undertaking is that he will be diligent in carrying the goods on the agreed voyage, and will do so directly, without any unnecessary deviation.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 104.*]

2. SHIPPING (§ 104*)—CARRIAGE OF GOODS—LOSS OF CARGO—"DEVIATION."

Deviation, in contracts of affreightment, as in marine insurance means a departure from the usual course of the voyage, or from the usual manner of prosecuting it, thereby changing the risk to which the cargo is subject.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 104.*

For other definitions, see Words and Phrases, vol. 3, pp. 2042–2045.]

3. SHIPPING (§ 125*)—CARRIAGE OF GOODS—LOSS OF CARGO—DEVIATION.

A steamer under charter to carry a cargo of lumber from a Puget Sound port to San Diego, Cal., shortly after starting took in tow a four-masted schooner belonging to the same owners. Three days later, while still having the schooner in tow, she encountered a storm, in which the sea swept over her and carried away the greater part of her deck load. *Held*, that in taking the schooner in tow she unjustifiably deviated in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the prosecution of her voyage under the charter, which deprived her of the right to the benefit of a provision of the charter party that the deck load should be at shipper's risk, and rendered her liable for the loss.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 459, 460; Dec. Dig. § 125.*]

In Admiralty.

Jordan, Rowe & Brann, for libelant.
McClanahan & Derby, for respondent.

DE HAVEN, District Judge. This is an action to recover the sum of $1,670.80, alleged to be due upon a contract of affreightment.

The libel alleges that on October 8, 1906, the libelant chartered to respondent the whole of the steamship Tampico, with the exception of the cabin and necessary room for the crew and the storage of provisions, for five consecutive voyages from two loading places on Puget Sound or Columbia river to San Francisco, Redondo, San Pedro, or San Diego, for the carriage of full cargoes of laths, shingles, and other lumber at prices therein specified. It further alleges that the charter party contained a provision to the effect that the vessel might "be permitted to carry her usual deck load, but at shipper's risk." The action is to recover the freight earned on the last of the series of voyages named in the charter party. The answer admits all of the allegations of the libel, and by way of cross-libel alleges that a portion of the cargo carried by the Tampico on the voyage mentioned in the libel was not delivered to respondent at the port of destination; that the cargo not delivered was of the value of $3,046.92, and that by reason of the failure to deliver the same respondent has been damaged in that sum; and for this sum it demands judgment, after deducting therefrom the amount claimed in the libel.

The voyage in question was from Everett, on Puget Sound, to San Diego, Cal., and it appears from the evidence that the Tampico completed the loading of her cargo at Everett on the 30th day of March, 1907; that she did not have sufficient fuel coal with which to perform the voyage, and could not obtain it at Everett; that she then went to Seattle, a distance of about 27 miles, out of the usual course of a voyage from Everett to San Diego, where she obtained the necessary coal, and from thence, on March 31, 1907, proceeded to San Diego. About four hours after leaving Seattle she took in tow the Wilbur L. Smith, a four-masted schooner, belonging to libelants, and continued, with the schooner in tow, upon her voyage. On the afternoon of April 3, 1907, the vessels encountered a severe storm off the Oregon coast, which increased in violence as the night proceeded; and about 10 o'clock of that night the towing hawser parted, and the schooner was cast adrift, and an hour later the sea swept over the stern of the Tampico, and carried away the greater part of her deck load. The storm moderated about 4 o'clock on the morning of the next day.

1. In every contract of affreightment, unless otherwise expressly

provided in the contract, the shipowner's undertaking is "that he will be diligent in carrying the goods on the agreed voyage, and will do so directly, without any unnecessary deviation." Carver's Carriage by Sea, § 285; Propeller v. Cordes, 21 How. 22, 16 L. Ed. 41. Under the contract of charter sued on, the libelant did not reserve to itself the right to deviate from the usual mode of prosecuting the voyage named in the charter party.

The question as to what constitutes a deviation is one which has frequently arisen in actions upon policies of marine insurance, and in such cases it has been defined as "any unnecessary or unexcusable departure from the usual course or general mode of carrying on the voyage insured." 9 Am. & Eng. Ency. of Law, p. 419. It has the same meaning in contracts of affreightment; that is to say, it is a departure from the usual course of the voyage, or from the usual manner of prosecuting the voyage, thereby changing the risk to which the cargo was subject under the contract of carriage. And in accordance with this view it has been held that taking another vessel in tow, without the consent of the shipper, constitutes a deviation.

Crocker v. Johnson, 1 Spr. 141, Fed. Cas. No. 3,398, was an action by the owners of the bark La Grange, against the consignee of a part of the cargo, to recover a contribution for damage sustained by the voluntary stranding of that vessel during a gale. The defense was that the bark had previously committed a deviation in going out of her course to speak, and then taking in tow, a vessel in distress, and the court held that taking a vessel in tow for the purpose of affording relief to the crew of a vessel in distress would not be a deviation, but that it would become so if the towing was continued longer than necessary to relieve the distress of the crew, and merely to save property.

So in Natchez Ins. Co. v. Stanton, 2 Smedes & M. (Miss.) 340, 345, 346, 41 Am. Dec. 592, it was held that taking a brig in tow by a steamer bound for Natchez to New Orleans was such a deviation as would discharge the underwriters, there being nothing in the policy which expressly authorized such towing. The court in that case said:

"The effect of a deviation is a discharge of the underwriters. But by his breach of this implied warranty against deviation, the owner of the ship becomes liable to the owner of the goods for their loss. 1 Ph. 485; Crosby v. Fitch, 12 Conn. 410, 31 Am. Dec. 745. It thus becomes necessary to decide whether taking the brig in tow amounted to a deviation, there being nothing in the policy which expressly authorized it. In our opinion it did. Mere delay, taking on board more cargo than is permitted by the policy, shortening sail to keep company with a prize, are all instances which have been holden to amount to a deviation. Maryland Ins. Co. v. Le Roy, 7 Cranch, 26, 3 L. Ed. 257; Oliver v. Maryland Ins. Co., 7 Cranch, 487, 3 L. Ed. 414."

The act of the Tampico in taking the Wilbur L. Smith in tow constituted a deviation. It was something not contemplated by the contract of charter, and its effect was to prolong the risk to which the cargo was subject in going from the port of Everett to San Diego.

The libelant contends that the Tampico was justified in taking the Wilbur L. Smith in tow, by reason of the existence of a local custom which permits steam vessels, when going from Puget Sound ports to

ports in California, loaded with cargo, to tow sailing vessels between such ports. It is sufficient to say of this contention that the evidence is not sufficient to show the existence of such a custom, as applied to steamers carrying cargo, under a charter like that set out in the libel.

2. It only remains to consider the legal effect of the deviation above mentioned upon the rights of the parties in this action, and upon this point the rule seems to be that, when there has been an unjustifiable deviation upon the part of the vessel in the prosecution of her voyage, the shipowner is deprived of the benefit of exceptions contained in the contract of affreightment, unless it affirmatively appears that the losses would have happened if there had been no deviation. Carver's Carriage by Sea, § 288; Maghee v. Camden Amboy R. R. Co., 45 N. Y. 514, 6 Am. Rep. 124.

The evidence in this case is not such as to warrant the court in finding that, if the Wilbur L. Smith had not been taken in tow, the loss of which respondent complains would have happened. It cannot be said with any degree of certainty that, if the Tampico had proceeded on her voyage with diligence, and without the incumbrance of the tow, she would still have been in the track of the storm, and have encountered the same peril which resulted in the loss of the respondent's lumber.

It follows from these views that the respondent is entitled to recover upon its cross-libel the damages sustained by it in the loss of the lumber referred to therein, and the case will be referred to a United States commissioner to ascertain and report the amount of such damages.

Let such a decree be entered.