**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2830-23

GARDEN STATE OUTDOOR,
LLC,

      Plaintiff-Appellant,

v.

EGG HARBOR TOWNSHIP,
EGG HARBOR TOWNSHIP
PLANNING BOARD,

      Defendants-Respondents.

_____

Argued March 12, 2025 – Decided June 10, 2025

Before Judges Currier, Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1171-23.

Justin D. Santagata argued the cause for appellant (Cooper Levenson, attorneys; Justin D. Santagata and Samantha Edgell, on the briefs).

Todd J. Gelfand argued the cause for respondents (Barker, Gelfand, James & Sarvas, PC, and Marc

Friedman, attorneys; Todd J. Gelfand, Jeffrey Sarvas, and Marc Friedman, on the brief).

PER CURIAM

Plaintiff Garden State Outdoor, LLC (Garden State) appeals from the trial court's order of May 15, 2024: (1) granting defendants' cross-motion for summary judgment declaring Section 225-63C(4)(c) constitutional under the Constitutions of the United States and New Jersey; (2) upholding defendant Egg Harbor Township Planning Board's (Planning Board) denial of Garden State's application for variance relief pursuant to N.J.S.A. 40:55D-70(c)(2); and (3) denying Garden State's request to require the Planning Board to approve its application with reasonable conditions, and for defendant Egg Harbor Township (Township) to issue all necessary permits.[1] In conducting our de novo review of the grant of summary judgment, we reverse the trial court's determination that defendants sustained their burden regarding the constitutionality of Section 225-63C(4)(c). Consequently, we similarly vacate the remainder of the order founded on that constitutional determination. We offer no opinion regarding the

_____

[1] We refer to the Planning Board and the Township collectively as defendants.

actual constitutional validity of the ordinance; instead, we only opine that based on the record, summary judgment was incorrectly granted.[2]

We derive the facts and procedural history from Garden State's complaint, the motion record, and the Planning Board's hearings. In July 1993, the Township adopted Section 225-2 that set out the general purpose of the Township's zoning ordinances. The introductory section provides:

> It is the purpose of this chapter to provide control in the interest of orderly growth, development and land use in the Township . . . consistent with existing development and with the objectives, principles and standards deemed beneficial to the interests and welfare of the population of the Township; to protect the established character and the social and economic benefits of both private and public property; to secure safety from fire, panic, flood and other dangers; to provide adequate light, air and convenience of access; to prevent overcrowding of land or buildings; to avoid undue concentration of population; to conserve the value of the buildings; to enhance the value of land throughout the Township; and to implement the goals and objectives of the Pinelands Comprehensive Management Plan.

As part of the Township's zoning scheme, Section 225-63 provides:

---

[2] Given our conclusion that summary judgment was incorrectly granted, we need not reach the trial court's analysis of Garden State's application for a variance from the ordinance. We offer no opinion on the merits of Garden State's application.

The following signs shall be permitted in business, commercial and industrial districts as an accessory structure to the principal use:

. . . .

B. Freestanding signs, subject to the following conditions and regulations:

. . . .

(8) A changeable message sign is one where the characters, letters or illustrations can be changed or rearranged without altering or changing the face of the sign. A changeable message sign cannot be animated with any flashing colors. Each changeable message shall be fixed for a minimum of 10 seconds before changing to the next message. After dusk, a dimmer light shall be used. No change in the message is permitted from 10:00 p.m. to 6:00 a.m.

. . . .

C. Billboards and off-premises advertising signs shall be additional permitted principal uses in the GC, M-1 and RCD Zoning Districts, subject to the following regulations:

. . . .

(4) Billboards or off-premises advertising signs shall not be located:

(a) Within 50 feet of a structure on the same lot.

4

(b) Within 500 feet of any residential district.

(c) Within 1,000 feet of an interchange or intersection.

According to its complaint, Garden State leases property in the Township "for purposes of erecting a digital billboard." Further, in December 2022,

> Garden State applied to the [Planning] Board to erect a digital billboard at the Property of 36 feet in height, where 70 feet is permitted, and more than 800 feet away from any residential use ("Application"). The Application required only minor bulk variance relief: (i) distance from an intersection, 350 feet proposed and 1,000 feet required; (ii) change in messaging every 8 seconds between 10:00[ p.m.] and 6:00[ a.m.]; (iii) front yard setback for utility easement; and (iv) distance from an existing structure (solar panels), 8 feet proposed and 50 feet required.

Garden State stated the Planning "Board granted every bulk variance except dist[an]ce to an intersection."

Garden State claimed the Planning Board members gave conflicting justifications for the 1000-foot intersection distance requirement. It alleged "the [Planning] Board members and [the Planning Board's] professionals consistently stated that they were concerned with 'safety,'" but "conceded . . . they were not even sure that 'safety' was the reason the 1,000-foot restriction existed." Garden

5

State claimed "[t]he [Planning] Board planner, for example, stated the 1,000-foot restriction was a 'siting' issue, not a 'safety' issue."

Garden State asserted that its "engineer testified that the digital billboard did not create any 'safety' issue at the nearby intersection and presented data supporting that conclusion." However, "[t]he [Planning] Board's engineer rejected that conclusion without any supporting data of his own."

Further, Garden State alleged that "[t]he 1,000-foot restriction for intersections only applie[d] to digital billboards and other 'off-premises advertising.'" It noted "'[o]n-premises advertising' and other signage can be within 1,000 feet of an intersection even though, by the [Planning] Board's and its professionals' assertions, they would create the same 'safety' concerns."

In addition, Garden State asserted that "[p]rior to adoption of the [Planning] Board's resolution of denial, [it] submitted a written request for the [Planning] Board to reconsider its denial on the basis that it violated the First Amendment and New Jersey's analogous free speech protection(s)." Our review of the Planning Board's hearing transcript similarly reveals Garden State raised constitutional concerns with the Planning Board during the hearing concerning its application.

In its complaint, Garden State sought "[a]n order declaring the 1,000-foot restriction unconstitutional." In response to Garden State's complaint, defendants filed an answer. The trial court issued a case management order, providing a briefing schedule. Garden State filed its brief, and defendants filed a motion to dismiss.

On April 12, 2024, the trial court heard the parties' oral arguments. During the hearing, the parties discussed whether the motion was for summary judgment or for dismissal. Nevertheless, after considering the parties' arguments, the court reserved its opinion.

On May 15, 2024, the trial court executed the order accompanied by a twenty-two-page written opinion. The court addressed Garden State's constitutional challenge to the ordinance. First, the court determined the ordinance was "content neutral" because "the language of the ordinance states that the [d]istance [r]egulation requirement applie[d] to all billboards and off-premises advertising signs regardless of their content."

Therefore, noting "[c]ontent-neutral laws must pass intermediate scrutiny in order to be deemed constitutional," the trial court stated the Township had "the burden of demonstrating that[:] (1) the ordinance serve[d] a substantial or important government interest; and (2) the ordinance [wa]s a reasonable fit that

does not burden more speech than necessary," citing U.S. v. O'Brien, 391 U.S. 367, 377 (1968).

The trial court found "that traffic safety, siting, and aesthetics [we]re important government interests promoted by" the ordinance. The court relied on the "interests . . . set forth in [the Township's] Code [Section] 225-2, which la[id] out the purpose of the Zoning Chapter of the Code." The court stated that Code Section 225-2 "demonstrate[d] that the Township ha[d] a longstanding need to maintain these governmental interests," and found "that billboards, by their very nature, can be perceived as an aesthetic harm."

Moreover, the trial court applied the Clark/Ward[3] test and found: (1) it was undisputed "the ordinance [wa]s content neutral"; (2) "there [we]re substantial government[] interest[s] promoted by the ordinance: traffic safety, siting, and aesthetics," and "the additional setback requirement advances the important interest of promoting open space, reducing road congestion, and promoting traffic safety by limiting the number of signage close to intersections"; and (3) "[d]efendants demonstrate[d] that its ordinance le[ft] open alternative channels of communication" "includ[ing] on-premises signs,

---

[3] Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288 (1984); Ward v. Rock Against Racism, 491 U.S. 781 (1989).

A-2830-23

internet advertising, direct mail, radio, newspapers, television, advertising circulars, advertising flyers, commercial vehicle sign advertising, and public transportation advertising," citing <u>Interstate Outdoor Advertising, L.P. v. Zoning Board of Mount Laurel</u>, 706 F.3d 527, 535 (3d. Cir. 2013).

Therefore, applying the summary judgment standard, the trial court found "there [wa]s no issue of material fact as to the constitutionality of . . . [Section] 225-63C(4)(c)."

On appeal, Garden State contends:  (1) "the trial court's citation to the 'purposes' section of the [d]istance [r]egulation is not, by itself, [the] competent evidence" required by <u>E & J Equities, LLC v. Board of Adjustment of the Township of Franklin</u>, 226 N.J. 549, 557 (2016); and (2) it presented evidence "that the proposed billboard was 'safe' for traffic and was not aesthetically different than other signage in the zone," and "[t]here was no competent evidence to the contrary."

We review the grant of summary judgment de novo, applying the same legal standards as the trial court.  <u>Green v. Monmouth Univ.</u>, 237 N.J. 516, 529 (2019).[4]  Under <u>Rule</u> 4:46-2(c),

_____

[4]  The trial court converted defendants' motion to dismiss, <u>Rule</u> 4:6-2(e), to a motion for summary judgment, <u>Rule</u> 4:46-2.  Conversion is permissible under

[t]he judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.

The right to freedom of speech is protected in the Constitutions of the United States, Amendment I, and the State of New Jersey, Article I, Paragraph 6. "[B]illboards . . . are a medium of communication, and any regulation of that medium may not transgress" those protections. E & J Equities, 226 N.J. at 556-57.

Nevertheless, "[b]illboards of any kind are subject to considerable regulation. Regulations on billboards are justified because 'signs take up space

---

Rule 4:6-2(e) "[i]f . . . matters outside the pleading are presented to . . . the court . . . and all parties [are] given reasonable notice of the court's intention to treat the motion as one for summary judgment and a reasonable opportunity to present all material pertinent to such a motion." Garden State asserts Rule 4:6-2(e) was not complied with. The assertion is of no moment considering our opinion. Nonetheless, we note the Rule's notice provisions must be complied with and the submission of certifications serves to convert a Rule 4:6-2(e) dismissal motion into a motion for summary judgment. See Nobrega v. Edison Glen Assocs., 167 N.J. 520, 526 (2001).

and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.'" Id. at 567 (quoting City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994)).

The New Jersey Supreme Court "conclude[d] that an ordinance or statute regulating signs, including billboards of any form, and affecting commercial as well as noncommercial speech should be examined in accordance with the Clark/Ward time, place, and manner standard." Id. at 580.

The New Jersey Supreme Court noted ordinances carry "a presumption of validity, [citing] Bell [v. Stafford,] 110 N.J. [384,] . . . 394 [(1988) however,] when faced with a constitutional challenge to its legislation," a governmental entity must establish the regulation is: (1) "content neutral," (2) "narrowly tailored to serve a recognized and identified government interest," and (3) "that reasonable alternative channels of communication exist to disseminate the information sought to be distributed." E & J Equities, 226 N.J. at 582 (first citing Ward, 491 U.S. at 791; and then citing Clark, 468 U.S. at 293).

In addressing the "identified governmental interest," the New Jersey Supreme Court stated "aesthetics and the safety of motorists . . . have long been recognized as legitimate and substantial government interests, particularly related to billboards." Id. at 583 (citing Metromedia v. City of San Diego, 453

11

U.S. 490, 507-08 (1981)).  Indeed, the Court had no "quarrel with the proposition that aesthetics and public safety are substantial government interests, particularly when the medium of expression is an outdoor, off-premises advertising device."  Id. at 585 (citing Metromedia, 453 U.S. at 507-08).

Nevertheless, "when a governmental entity restricts speech, it must do more than simply invoke government interests that have been recognized over time as substantial.  In other words, there must be a modicum of support for the invoked government interest."  Id. at 583.  "A governing body seeking to restrict expression cannot simply invoke those interests with scant factual support informing its decision-making and expect to withstand a constitutional challenge."  Id. at 585.

Defendants argue E & J Equities's "modicum of support" requirement is limited to "the proofs necessary for the adoption of [a] new ordinance," and is inapplicable here because this matter "concerned a variance from an existing ordinance."  In addition, defendants focus on the Court's use of the phrase "[a] governing body seeking to restrict," and distinguishes this matter because here "[d]efendants were not 'seeking' anything; rather it was [Garden State] who was 'seeking' a variance from an already existing ordinance."  Further, defendants contend the Planning Board does "not have the power to determine the

12                                                                                    A-2830-23

constitutionality of [an] ordinance," citing N.J.S.A. 40:55D-25. Finally, defendants assert "case law . . . demonstrates that looking to the 'purposes' section of an existing ordinance . . . is the proper method identifying the substantial government interest and the constitutionality of the restriction." We are not persuaded.

First, there is nothing in the Court's decision that would confine the "modicum of support" requirement solely to new ordinances. Instead, recognizing the constitutional importance of free speech, a governmental entity must provide a "modicum of support" to sustain its restriction. Indeed, to interpret the Court's direction otherwise could leave constitutionally infirm ordinances in place.

Second, defendants' argument regarding which party was "seeking" relief is misguided. The Township's ordinance certainly sought to restrain Garden State's freedom of speech on its leasehold.

Third, Garden State's complaint sought the trial court, not the Planning Board, to invalidate the ordinance as unconstitutional. We recognize Garden State's comments during the Planning Board's hearing and its letter after the hearings, addressing the constitutional validity of the ordinance, foreshadowed

the impending lawsuit, but Garden State did not request the Planning Board to usurp its statutory powers.

Lastly, defendants cite to Metromedia, Hucul Advertising, LLC v. Chart Township of Gaines, 748 F.3d 273, 277-78 (6th Cir. 2014), and Prime Media, Inc. v. City of Brentwood, 398 F.3d 814 (6th Cir. 2005), for the proposition that because we are concerned with an existing ordinance, we only need to consider the Township's "codified statements [to conclude there is] sufficient evidence of 'substantial governmental interests' as a matter of law."  We disagree.

Metromedia "involve[d] the validity of an ordinance of the city of San Diego, Cal., imposing substantial prohibitions on the erection of outdoor advertising displays within the city."  453 U.S. at 493.  The stated "purpose was 'to eliminate hazards to pedestrians and motorists brought about by distracting sign displays' and 'to preserve and improve the appearance of the City.'"  Ibid.

The United States Supreme Court stated there could be no "substantial doubt that the twin goals that the ordinance seeks to further -- traffic safety and the appearance of the city -- are substantial governmental goals.  It [wa]s far too late to contend otherwise with respect to either traffic safety . . . or [a]esthetics."  Id. at 507-08.

A-2830-23

Nonetheless, the Court tested the reasonableness of the assertion that "billboards are real and substantial hazards to traffic safety," id. at 509; and noted "[a]esthetic judgments are necessarily subjective, defying objective evaluation, and for that reason must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose." Id. at 510. Therefore, the Court did not merely look to the stated purpose of the ordinance, but instead analyzed the stated purposes.

Further, in Hucul, there was no dispute "that the asserted governmental interests [we]re significant," Hucul, 748 F.3d at 278; and in Prime Media, "[t]he parties d[id] not dispute" the "legitimate governmental interests—aesthetics and traffic safety." Prime Media, 398 F.3d at 819. Therefore, defendants' reliance on these cases is misplaced because the asserted purposes were not in dispute.

Having dispensed with defendants' arguments regarding the applicability of E & J Equities, and its other arguments, we consider, under Rule 4:46-2, the E & J Equities's "modicum of support" requirement—the Township's burden of persuasion—to determine if there was a "genuine issue as to any material fact challenged and [if defendants were] entitled to a judgment or order as a matter of law." R. 4:46-2(c).

A-2830-23

Applying the summary judgment standard, defendants' sole reliance on the generic introduction to the zoning ordinances fails to satisfy the requisite support. Indeed, that type of reliance was rejected by the New Jersey Supreme Court. See E & J Equities, 226 N.J. at 583 ("[W]hen a governmental entity restricts speech, it must do more than simply invoke government interests that have been recognized over time as substantial."). Further, defendants' reliance on the stated purpose, without more, falls short of even the "scant factual support" the Court warned of in E & J Equities. Id. at 585.

In addition, we note Garden State proffered evidence to support the notion that the Township's interests, which Garden State asserts are safety and aesthetics, were inapplicable to Garden State's application. While the trial court did not assess that evidence in its opinion regarding the constitutional argument, giving Garden State all reasonable inferences, it raises a material dispute of fact under Rule 4:46-2, and provides further support for our conclusion that summary judgment was incorrectly granted to defendants.

Therefore, we conclude defendants failed to sustain their burden, as a matter of law, for summary judgment and reverse the order.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

16

A-2830-23